## THE PEOPLE v. JOHN L. KNAPP.

42 267
94 640
42 267
142 581
e142 582
f142 584

*Adultery—Cross-examination of particeps criminis and of defend-
ant—Presence of officer in jury-room.*

Where the *particeps criminis* in adultery testified to the offense,
and on cross-examination denied having had a certain obscene
conversation with a man named, or having criminal intercourse
with another specified person, it was *held* that though the ques-
tions might be asked her, other witnesses could not be called
to prove her denial false.

A prosecution for adultery is not like a case of seduction, in which
the previous chastity of the woman is necessarily in issue.

In a prosecution for adultery the defendant was asked on cross-
examination whether his wife had not made a complaint against
the other party for the alleged offense, and he replied that he
had heard so. *Held* that this answer should not have been
received in evidence.

Comp. L., § 7693, which forbids any prosecution for adultery except
on complaint of the husband or wife, contemplates that the wife
may proceed without her husband's consent.

A verdict in a criminal case may be set aside and a new trial granted
if the officer who attended the jury remained in the jury-room
during their deliberations.

It is against public policy to allow the deliberations of a *petit* jury
to be reported.

Exceptions from Lenawee. Submitted October 29.
Decided November 29.

ADULTERY. Respondent was convicted.

Attorney General *Otto Kirchner* for the People. The
answer of a witness to a collateral inquiry, is conclusive,
1 Greenl. Ev., § 449; a jury may deliberate in open
court or retire for consultation (3 Chitty's Prac., 916; 1
Archb. Q. B. Prac., 197), and their separation after agree-
ment and before the verdict is rendered, does not inval-
idate it, *Brown v. M'Connel*, 1 Bibb (Ky.), 265; *Cook v.
Walters*, 4 Ia., 72; *Horton v. Horton*, 2 Cow., 589; *Sar-
tor v. McJunkin*, 8 Rich. (S. C.), 455; *Stancell v. Kenan*,
32 Ga., 56; nor does the fact that a third person con-

versed with a juror, *Ellis v. Ponton*, 32 Tex., 434; nor sending a bailiff into the jury-room after a paper, *Spencer v. Trafford*, 42 Md., 1, 21; and the party complaining of misconduct in keeping the jury must show that he was injured, *Medler v. State*, 26 Ind., 171; and the objection is not reviewable on error, *Brister v. State*, 26 Ala., 107.

*Millard & Bean* for defendant. The presence of an officer in the jury-room is a restraint on the jury's deliberations and is ground for a new trial, *State v. Snyder*, 20 Kan., 306.

COOLEY, J. I. The prosecution in this case was for adultery. Harriet Ashdown, the alleged *particeps criminis*, was the only witness testifying to the offense, and she gave positive evidence that it was committed. On cross-examination she was asked whether she had not had a certain obscene conversation with a man named, and whether she had not had criminal intercourse with another person named; and when she denied both, witnesses were called to prove the denial false. The circuit court rejected the evidence, and this rejection presents the first question for our consideration.

The defense had a right to put the questions to Mrs. Ashdown, but when she answered in the negative they could not push the investigation further. The questions related to matters foreign to the issue then being tried, and the witness could not be supposed to come prepared with evidence to disprove such charges. But if the witness were prepared, it would not be conducive to justice to permit the investigation to be gone into. It would necessarily lead the attention of the jury to some extent away from the main controversy, and they would lose sight of the main issue while trying those purely collateral. *Dunn v. Dunn*, 11 Mich., 284; *Wilbur v. Flood*, 16 Mich., 40, 44. The case is not like that of seduction, in which the chastity of the woman previous to the alleged seduction is necessarily in issue. *People v. Clark*, 33 Mich., 113.

II. The defendant having made his statement to the jury, the prosecution was permitted to ask him, on cross-examination, whether his wife had not made a complaint against Mrs. Ashdown for the alleged adultery. He replied under objection, that he had heard so; and this reply was allowed to go to the jury as evidence. If this was admissible, it must be on the assumption that his wife would not prosecute unless he assented, and that his assent would be an admission of his guilt. There is no legal basis for such an assumption. The wife might very properly and justly have instituted prosecution on Mrs. Ashdown's confession, whether her husband was consenting or protesting, and whether she believed the confession or disbelieved it; and the statute which allows to the injured wife and husband the exclusive privilege of prosecuting the guilty parties (Comp. L., § 7693) contemplates that the injured wife will proceed irrespective of the husband's consent, and in spite of him. The evidence should therefore not have been received. If it influenced the jury in any way it must have been injurious to defendant.

III. When the jury retired to consider of their verdict, an officer accompanied them and remained in the room during their deliberations. The attention of the court was called to the fact on a motion for a new trial, but on its being made to appear that the officer did not converse with the jury in their room, the court denied the motion. This was on the assumption that under the circumstances the defendant could not have been injured by the officer's presence in the room.

It is not claimed that the officer can with propriety be allowed to be within hearing when the jury are deliberating. Whether he does or does not converse with them, his presence to some extent must operate as a restraint upon their proper freedom of action and expression. When the jury retire from the presence of the court, it is in order that they may have opportunity for private and confidential discussion, and the necessity for this is assumed in every

case, and the jury sent out as of course, where they do not notify the court that it is not needful. The presence of a single other person in the room is an intrusion upon this privacy and confidence, and tends to defeat the purpose for which they are sent out. And if one. may be present, why not several? Why may not the officer bring in his friends to listen to what must often be interesting discussions, and then defend his conduct on proof that they did nothing but listen?

But the circumstances of particular cases may make it specially mischievous. In their private deliberations the jury are likely to have occasion to comment with freedom upon the conduct and motives of parties and witnesses, and to express views and beliefs that they could not express publicly without making bitter enemies. Now the law provides no process for ascertaining whether the officer is indifferent and without prejudice or favor. as between the parties; and as it is admitted he has no business in the room, it may turn out that he goes there because of his bias, and in order that he may report to a friendly party what may have been said to his prejudice, or that he may protect him against unfavorable comment through the unwillingness of jurors to criticise freely the conduct and motives of one person in the presence of another who is his known friend. Or the officer may be present with a similar purpose to protect a witness whose testimony was likely to be criticised and condemned by some of the jurors. Suppose some member of the officer's family had given important evidence in the case; what reason can there be for expecting that this evidence would be freely canvassed and carefully considered in his presence? But the case may touch him still more nearly: in criminal cases especially, officers frequently become important witnesses; and no one can have had much to do with such trials without feeling that unusual care and caution is necessary in the examination and sifting of their evidence; in order to guard against a natural tendency to allow the facts to

be colored by their prepossessions, especially in the case of those they have themselves arrested or accused. If, under such circumstances, the officer may be present when his own evidence is to receive its final sifting, the accused may well suspect he is tried and judged unfairly. Nor will it do to leave the case for subsequent investigation in order to ascertain whether the suspicion is well founded: the time of the court cannot be taken up with such inquiries; and if it could be, the result would not always remove the suspicion. The only proper and just course is to insist upon a rigorous observance of the proper practice, in order to prevent all occasion for injurious suspicions.

The public are concerned in this as well as the accused; and the public is also concerned in not having the deliberations of the jury reported for news-gatherers and scandal-mongers outside. Jurors are generally expected to keep their own counsel, because they have an interest in doing so; but the officer is under no corresponding restraint, and it is through him that what takes place in the jury room is most likely to leak out. The courts should see to it that, as far as possible, an officer disposed to do this species of mischief is deprived of the opportunity.

It was held in *Cole v. Swan*, 4 Greene (Iowa), 32, that officers having a jury in charge while they are deliberating on their verdict should never speak to them except to ask them whether they have agreed, and that if an officer violates this rule, any verdict afterwards returned, whether the conversation did or did not have any influence in producing the verdict, should be set aside the moment the fact comes to the knowledge of the court. We have said enough already to show that it is not conversation alone that is mischievous; the mere presence of the officer within the hearing of the jury is often quite as much so. In one case what he would say might influence the verdict; in another, what his presence

might restrain jurors from saying, might accomplish the same result.

It must be certified to the court below that the verdict should be set aside and a new trial granted.

The other Justices concurred.